## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

STRIKE 3 HOLDINGS, LLC,    )

    )

       Plaintiff,    )   Civil Case No. 4:21-cv-10055-MFL-EAS

    )

v.    )   District Judge: Matthew F. Leitman

    )   Magistrate Judge: Elizabeth A. Stafford

JOHN DOE subscriber assigned IP    )

Address 76.192.56.30,    )

    )

       Defendant.    )

_____)

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S INCORPORATED MOTION TO DISMISS

## <u>QUESTIONS PRESENTED</u>

I. Whether the Court should vacate its prior order authorizing discovery, quash the subpoena issued on AT&T, or dismiss Plaintiff First Amended Complaint because Defendant alleges that he is not aware of any notice issued by AT&T regarding Plaintiff's subpoena.

Defendant answers "yes."

Plaintiff answers "no."

II. Whether the Court should dismiss Plaintiff's First Amended Complaint for failing to allege sufficient factual matter connecting Defendant, individually, to the infringement.

Defendant answers "yes."

Plaintiff answers "no."

III. Whether the Court should dismiss Plaintiff's First Amended Complaint because discovery will be futile in light of Defendant's preemptory claims of privilege.

Defendant answers "yes."

Plaintiff answers "no."

## **TABLE OF CONTENT**

I.    INTRODUCTION ............................................................1

II.   FACTS ......................................................................3

III.  STANDARD................................................................6

IV.   ARGUMENT...............................................................8

  A.  The Stored Communications Act Does Not Apply to This Action.................8

  B.  Strike 3 Has Alleged Sufficient Factual Matter

     to State a Plausible Claim for Relief ............................................15

    1.  Strike 3's First Amended Complaint is Not "Merely Speculative"............15

    2.  Doe's Objections Based on Various Privileges is Premature .....................18

V.    CONCLUSION............................................................22

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ......................................6
*Baxter v. Palmigiano*,
  425 U.S. 308, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976) ....................................20
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .......................... 6, 18, 19
*Brown v. Bargery*,
  207 F.3d 863 (6th Cir. 2000) .................................................................7
*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ...................................19
*CineTel Films, Inc. v. Does 1-1,052*,
  853 F. Supp. 2d 545 (D. Md. 2012)........................................................10
*Convertino v. U.S. Dep't of Just.*,
  No. 07-13842, 2010 WL 523042 (E.D. Mich. Feb. 9, 2010) ................................7
*Courtright v. City of Battle Creek*,
  839 F.3d 513 (6th Cir. 2016) .................................................................6
*Doe v. Michigan State Univ.*,
  989 F.3d 418 (6th Cir. 2021) .................................................................7
*Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*,
  785 F.2d 897 (11th Cir. 1986) ...............................................................1
*Duha v. Agrium, Inc.*,
  448 F.3d 867 (6th Cir. 2006) ................................................................11
*Elkins v. United States*,
  364 U.S. 206 (1960).........................................................................13
*First Time Videos, LLC v. Does 1–500*,
  276 F.R.D. 241 (N.D. Ill. 2011)..............................................................9
*GenCorp, Inc. v. Am. Int'l Underwriters*,
  178 F.3d 804 (6th Cir.1999) .................................................................7
*In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*,
  707 F.3d 283 (4th Cir. 2013) ...............................................................12
*In re U.S.*,
  665 F. Supp. 2d 1210 (D. Or. 2009) ........................................................12
*In re Various Strike 3 Holdings, LLC Copyright Infringement Cases*,
  No. 17-6717 (WFK)(CLP), 2018 WL 3404142 (E.D.N.Y. July 11, 2018)..........11
*InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*,
  413 F. Supp. 3d 687 (E.D. Mich. 2019) ...................................................18

*Jackson v. Birmingham Bd. of Educ.*,
  544 U.S. 167, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005) ...................................18
*Jessup-Morgan v. Am. Online, Inc.*,
  20 F. Supp. 2d 1105 (E.D. Mich. 1998) ...............................................................9
*Johnson v. United States*,
  228 U.S. 457, 33 S. Ct. 572, 57 L. Ed. 919 (1913) (Holmes, J.).........................21
*Malibu Media LLC v. Doe*,
  No. 13–12178, 2013 WL 3945978 (E.D.Mich.2013).....................................5, 16
*Malibu Media, L.L.C. v. Doe*,
  No. 15-11139, 2015 WL 13297956 (E.D. Mich. July 27, 2015).........................16
*Malibu Media, LLC v. Braun*,
  No. 14-12409, 2015 WL 1014951 (E.D. Mich. Mar. 9, 2015)...........................16
*Malibu Media, LLC v. Doe*,
  No. 14-748 (WDQ), 2015 WL 857408 (D. Md. Feb. 26, 2015) .........................17
*Malibu Media, LLC v. Doe*,
  No. 15-10307, 2015 WL 1886210 (E.D. Mich. Apr. 24, 2015) ..........................16
*Malibu Media, LLC v. Doe*,
  No. 18-450, 2019 WL 8301066 (N.D. Ill. June 5, 2019) ...................................17
*Malibu Media, LLC v. House*,
  No. 13-12218, 2014 WL 861599 (E.D. Mich. Mar. 5, 2014)...............................5
*Malibu Media, LLC v. Tashiro*,
  No. 13 -00205 (WTL), 2015 WL 2371597 (S.D. Ind. May 18, 2015)................20
*Riverview Health Inst. LLC v. Med. Mut. of Ohio*,
  601 F.3d 505 (6th Cir. 2010) .............................................................................18
*Strike 3 Holdings, LLC v. Bordley*,
  No. 18-868, 2019 WL 9098120 (E.D. Pa. Feb. 26, 2019)...................................19
*Strike 3 Holdings, LLC v. Doe*,
  330 F.R.D. 552 (D. Minn. 2019) ........................................................................11
*Strike 3 Holdings, LLC v. Doe*,
  337 F. Supp. 3d 246 (W.D.N.Y. 2018).................................................................11
*Strike 3 Holdings, LLC v. Doe*,
  351 F. Supp. 3d 160 (D.D.C. 2018).....................................................................17
*Strike 3 Holdings, LLC v. Doe*,
  964 F.3d 1203 (D.C. Cir. 2020)........................................................... 4, 6, 15, 19
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-01874 (GLR), ECF No. 17 (D. Md. Oct. 26, 2018) ...............................17
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-06488 (N.D. Ill. Apr. 4, 2019).................................................................17
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12585 (NLH)(JS), 2019 WL 5446239 (D.N.J. Oct. 24, 2019) ...............17

*Strike 3 Holdings, LLC v. Doe*,
   No. 18-12585 (NLH)(JS), 2020 WL 3567282 (D.N.J. June 30, 2020)................4
*Strike 3 Holdings, LLC v. Doe*,
   No. 18-2496 (TJH)(SPx), 2019 WL 12446430 (C.D. Cal. Mar. 29, 2019) ..........4
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-02473 (JDW), ECF No. 8 (E.D. Pa. Aug. 20, 2019)................................14
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-10677 (TJH)(SPx), 2020 WL 5357781 (C.D. Cal. Apr. 23, 2020)..........11
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-115 (JBA), 2019 WL 2066913 (D. Conn. May 10, 2019) ......................11
*Strike 3 Holdings, LLC v. Doe*,
   No. 19-396 (GJH), 2020 WL 917090 (D. Md. Feb. 25, 2020)............................15
*Strike 3 Holdings, LLC v. Doe*,
   No. 20-08646 (TJH)(SP), ECF No. 17 (C.D. Cal. Jan. 12, 2021) ........................9
*Strike 3 Holdings, LLC v. Doe*,
   No. 21-423 (PX), 2021 WL 1169272 (D. Md. Mar. 26, 2021) ...........................19
*Strike 3 Holdings, LLC v. Doe*,
   No. CV 18-14060, ECF No. 14 (E.D. Mich. May 31, 2019) ..............................17
*Strike 3 Holdings, LLC v. Nemeth*,
   No. 20-00960 (CMH)(IDD), ECF No. 39 (E.D. Va. Jun. 21, 2021)....................17
*TCYK, LLC v. Does 1-87*,
   No. 13-3845, 2013 WL 5567772 (N.D. Ill. Oct. 9, 2013) ..............................9, 10
*Trammel v. United States*,
   445 U.S. 40, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980) ........................................21
*U.S. ex rel. Bilokumsky v. Tod*,
   263 U.S. 149, 44 S. Ct. 54, 68 L. Ed. 221 (1923).................................................20
*U.S. v. Gross*,
   662 F.3d 393 (6th Cir. 2011) ...............................................................................13
*United States v. Leake*,
   95 F.3d 409 (6th Cir. 1996) .................................................................................13
*United States v. Porter*,
   986 F.2d 1014 (6th Cir. 1993) .............................................................................21
*United States v. Sims*,
   755 F.2d 1239 (6th Cir. 1985) .............................................................................21
*United States v. Williams*,
   615 F.3d 657 (6th Cir. 2010) ...............................................................................13
*Utah v. Strieff*,
   579 U.S. 232, 136 S. Ct. 2056, 195 L. Ed. 2d 400 (2016) ..................................13
*Wong Sun v. United States*,
   371 U.S. 471, 83 S.Ct. 407 , 9 L.Ed.2d 441 (1963)............................................13

## Statutes

18 U.S.C. § 2701 ...................................................................................1
18 U.S.C. § 2702 .............................................................................9,10
18 U.S.C. § 2703 .............................................................................9, 12
42 U.S.C. § 1983 ...............................................................................9
47 U.S.C. § 551 .......................................................................... *passim*

## Other Authorities

Matthew Sag & Jake Haskell, *Defense Against the Dark Arts of Copyright Trolling*, 103 Iowa L. Rev. 571 (2018)....................................................4
Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1209 (2004) .......................8

## Rules

E.D. Mich. LR 7.1(h)(3) ........................................................................7
Fed. R. Civ. P. 1 ...............................................................................15
Fed. R. Civ. P. 26(b)(2) ....................................................................14
Fed. R. Civ. P. 26(c) .........................................................................15
Fed. R. Civ. P. 30(c)(2) .....................................................................19
Fed. R. Civ. P. 37 .............................................................................19
Fed. R. Civ. P. 41(b) .........................................................................12
Fed. R. Civ. P. 45 .............................................................................21

<u>**PLAINTIFF'S OPPOSITION TO**</u>
<u>**DEFENDANT'S INCORPORATED MOTION TO DISMISS**</u>

Plaintiff, Strike 3 Holdings, LLC ("Strike 3"), hereby respectfully submits the following Opposition to Defendant's Incorporated Motion to Dismiss ("Motion").

**I.   INTRODUCTION**

This is not a criminal case. Strike 3 is not a government agent. It cannot bring criminal claims.  And while Title 17 does contain some irrelevant criminal provisions, the Copyright Act does not permit a private cause of action for those provisions. *Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 913 (11th Cir. 1986).  Unable to contend with Strike 3's straightforward claim for direct copyright infringement, Defendant, John Doe ("Doe"),[1]  resorts to several doctrines of criminal procedure and other irrelevant statutes to derail the orderly progression of the litigation.  Those arguments are meritless, and, at points, border on the frivolous.

The bulk of Defendant's Motion is devoted to outlining the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*, in a radical attempt to convince the Court to reconsider and vacate its earlier order authorizing early discovery.  Yet the SCA has no bearing on Strike 3's third-party subpoena or any

---

[1] Although Defendant has been identified and served, both the Court's protective order, [ECF No. 5], and Order on early discovery, [ECF No. 6, at ¶ 5], require that Defendant be referred to pseudonymously and that Defendant's identifying information not be filed on the public docket.

part of this litigation.  While the only vaguely relevant portion of that statute, Section 2702(a)(3), does create a qualified privacy right in the subscriber's identifying information in *some* context, the express exception for civil litigation built into that rule makes clear that the SCA's prohibition does not extend to Strike 3's subpoena. Rather, the relevant statute is the Cable Communications Policy Act of 1984 ("CCPA"), which also creates a qualified privacy right in subscribers' identifying information.  47 U.S.C. § 551 *et seq.*  The Court's Order, however, has explicitly considered the CCPA, and authorized Strike 3 to issue its third-party subpoena pursuant to the exemption carved out in that statute.  Thus, neither statute proscribes the early discovery Strike 3 used to obtain Doe's identifying information.

Doe tries to further undermine the early discovery in this case by alleging that he has not received notice of the subpoena, and that the supposed omission by the Internet service provider ("ISP"), AT&T, renders that evidence "fruit of the poisonous tree."  While this is not a Fourth Amendment case and suppression under that doctrine is inapt, Doe has simply failed to provide *any* evidence supporting this allegation beyond conclusory statements in the Motion.  AT&T has a policy of providing subscriber's with notice, and Strike 3 attached the Court's order to its subpoena, instructing the ISP to provide notice.  Since Doe has failed to carry his burden, the Court need not un-ring the bell and claw back the information that Strike

3 discovered and used to amend its complaint and serve summons.

Finally, Doe makes short shrift of the Rule 12(b)(6) challenge, but those arguments misapprehend the pleadings. Strike 3 has not stated a claim for copyright infringement that can apply to "anybody;" it has specifically amended its complaint to state a claim against Doe. The specific allegations linking Doe to the infringement render the claim not only plausible, but likely. Moreover, Doe's confusion over future discovery and the possible privileges that may attach are simply irrelevant on a motion to dismiss. They are also inaccurate. Even if Doe refused to testify under the Fifth Amendment, or if some other privilege foreclosed discovery on certain communications, the Federal Rules of Civil Procedure are not so cramped; they provide parties with the flexibility needed to uncover whatever relevant evidence is needed to support their claim from multiple sources. Doe will, however, be able to raise these objections and privileges during discovery when those issues materialize, but at this stage, they do not affect whether Strike 3 has stated a plausible claim.

## II.   FACTS

Strike 3 owns the intellectual property in award-winning adult motion pictures. *See* Declaration of David Williamson, ¶ 13 [ECF No. 4-1 (Ex. A)]. Strike 3's philosophy is to hold itself above the rest: higher budgets, higher compensation for its actors and actresses, and higher-end productions. *Id.* at ¶¶ 15–16. Despite its success, Strike 3 does not rest on its back-catalogue and is continually seeking out

3

new opportunities and ventures to provide subscribers with a better experience.  *Id.* at ¶¶ 17, 19.  Strike 3's business has "raised the bar" for the rest of the industry, "leading more adult studios to invest in better content, higher pay for performers, and to treat each performer like an artist."  *Id.* at ¶ 25.

As a result of its higher production and talent costs, Strike 3 is sensitive to the substantial revenue loss caused by mass copyright infringement.  Despite attempting to mitigate the infringement outside the courts, *see id.* at ¶ 31 (sending thousands of DMCA takedowns to infringing websites), lawsuits like this have become a necessary option of last resort.  *Id.* at ¶ 32.  Plaintiff understands the delicate nature of these suits, and for this and other reasons, has put in place protocols–including inviting this Court to enter a protective order–which this Court has done.  *See* [ECF No. 5].

Despite the safeguards in place, Doe tars Strike 3 as a "copyright troll," [ECF No. 22, at 8–16],[2] yet "Plaintiff 'is *not* what has been referred to in the media and

---

[2] The article Doe cites, Matthew Sag & Jake Haskell*, Defense Against the Dark Arts of Copyright Trolling*, 103 Iowa L. Rev. 571 (2018), while largely used to provide general statistics about *other* rightsholders, has not had a checked history in the judiciary. *See Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1205 (D.C. Cir. 2020) (reversing and remanding district court that denied early discovery and dismissed Strike 3's complaint where the lower court, in part, predicated its judgment on conclusion made from that article); *Strike 3 Holdings, LLC v. Doe*, No. 18-12585 (NLH)(JS), 2020 WL 3567282, at *11–12 (D.N.J. June 30, 2020) (revising district courts order quashing subpoena that was based, in part, on conclusions drawn from that article); *see also Strike 3 Holdings, LLC v. Doe*, No. 18-2496 (TJH)(SPx), 2019 WL 12446430, at *3 (C.D. Cal. Mar. 29, 2019) (denying motion to quash).

legal publications, and in the internet blogosphere, as a 'copyright troll'—i.e., a nonproducer who merely has acquired the right to bring lawsuits against alleged infringers." *See Malibu Media, LLC v. House*, No. 13-12218, 2014 WL 861599, at *1 (E.D. Mich. Mar. 5, 2014) (quoting *Malibu Media LLC v. Doe*, No. 13–12178, 2013 WL 3945978, *2 (E.D.Mich.2013)) (emphasis original). Strike 3 is "an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works, and a number of Plaintiff's copyrighted works have evidently been making the rounds on BitTorrent." *Id.* (internal quotations and brackets omitted).

Doe is accused of downloading, distributing, and hence infringing numerous different works of Plaintiff across the BitTorrent network. *See generally* [ECF Nos. 9]. BitTorrent allows users to operate anonymously, revealing only the IP address they are using, as well as a wealth of information concerning their internet activity. But BitTorrent does not reveal the infringer's identity. Beyond the technical obstacle, a legal hurdle further complicates matters: the CCPA creates a qualified privacy right in a subscriber's personal identifying information, preventing the ISP from disclosing Doe's identity absent a Court order. *See* 47 U.S.C. § 551 *et seq.* That is why "in cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint—much less confer with the defendant—without obtaining identifying information from a third party, 'the only potential avenue for

discovery is [a court order under] Rule 26(d)(1).'" *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 (D.C. Cir. 2020) (citation omitted).

That is precisely what Strike 3 did here.  It requested leave of court to take early discovery, [ECF No. 4], which the Court granted. [ECF No. 6].  The ISP produced the subscriber's identity to Strike 3, and, upon further investigation, Strike 3 determined that the subscriber was the most likely infringer.  Accordingly, Plaintiff filed and served its First Amended Complaint ("FAC") on Doe, which included specific allegations linking Doe, individually, to the infringement.  [ECF Nos. 9, 21].

## III.   STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, at 556).  The Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded factual allegations in the complaint as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (collecting cases). "Dismissal of a complaint for

6

the failure to state a claim on which relief may be granted is appropriate *only if* it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Doe v. Michigan State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021) (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)) (emphasis added).

Doe also requests throughout the Motion that the Court "quash" the third-party subpoena and treat the ISP's disclosure as "fruit of the poisonous tree." To the extent that Defendant seeks vacatur of the Court's prior order authorizing early discovery, [ECF No. 6], the standard for a motion for reconsideration is more exacting. Such relief is available only when "there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir.1999) (citations omitted). "Additionally, the court will ordinarily grant a motion[] for reconsideration only if the movant can (1) 'demonstrate a palpable defect by which the court and the parties have been misled,' and (2) show that 'correcting the defect will result in a different disposition of the case.'" *Convertino v. U.S. Dep't of Just.*, No. 07-13842, 2010 WL 523042, at *4 (E.D. Mich. Feb. 9, 2010), *aff'd,* 795 F.3d 587 (6th Cir. 2015) (quoting E.D. Mich. LR 7.1(h)(3)).

7

## IV.   ARGUMENT

### A.   The Stored Communications Act Does Not Apply to This Action

Doe's fixation on the Stored Communications Act is mystifying.  Although "[t]he statute is dense and confusing," Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1209 (2004), a cursory review of its language reveals that it has no bearing on this litigation because those provision either do not apply to private parties or afford exemptions to them.

> The [SCA] creates a set of Fourth Amendment-like privacy protections by statute, regulating the relationship between government investigators and service providers in possession of users' private information.  It does this in two ways.  First, [Section 2703] creates limits on the government's ability to compel providers to disclose information in their possession about their customers and subscribers. * * * Second, [Section 2702] places limits on the ability of ISPs to voluntarily disclose information about their customers and subscribers to the government. Although the private search doctrine of the Fourth Amendment allows private providers to make such disclosures, the SCA imposes limitations on the circumstances in which such a disclosure can occur.

*Id.* at 1212–13 (citations omitted).[3]  Section 2703 can be readily dispensed as Strike 3 is not the government or an agent of the government.  *Cf. Strike 3 Holdings, LLC*

---

[3] Section 2701(a) also prohibits "intentionally access[ing] without authorization a facility through which an electronic communication service is provided; or . . . intentionally exceed[ing] an authorization[.]"  This Section is irrelevant because the Court's order authoring the subpoena "contemplates no *unauthorized* access." *See Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 449 (C.D. Cal. 2007) (emphasis original).

*v. Doe*, No. 20-08646 (TJH)(SP), ECF No. 17 (C.D. Cal. Jan. 12, 2021) (denying defendant's civil rights counterclaim under 42 U.S.C. § 1983 because Strike 3 did not qualify as a state actor); *Jessup-Morgan v. Am. Online, Inc.*, 20 F. Supp. 2d 1105, 1108 (E.D. Mich. 1998) (holding SCA does not apply where ISP produced customer information to private parties' attorney pursuant to a properly executed subpoena). Notably, only Section 2703 requires the subscriber receive notice prior to production of the requested information. *Compare* 18 U.S.C. § 2703(b)(1) *with id.* § 2702 *et seq.*

By contrast, Section 2702 *does* apply to private entities, but *does not* extend Strike 3's third-party subpoena. Section 2702 prohibits defined entities from producing three limited categories of information. The first two categories regard the "contents" of "communication[s.]" *See* 18 U.S.C. §§ 2702(a)(1)–(2). As courts reviewing similar subpoenas have noted, reliance to these provisions is "erroneous" since the subpoena "do[es] not seek the contents of communications, such as . . . emails," but rather seeks information about the subscriber. *TCYK, LLC v. Does 1-87*, No. 13-3845, 2013 WL 5567772, at *3 (N.D. Ill. Oct. 9, 2013) (citing *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 247–48 (N.D. Ill. 2011); *Patrick Collins, Inc. v. Does 1–11*, 11–01776 (AW), 2011 WL 5439045 (D. Md. Nov. 8, 2011)).

This leaves the final category, which prohibits an ISP from "knowingly divulg[ing] a record or other information pertaining to a subscriber to or customer of such service[.]" 18 U.S.C. § 2702(a)(3). "Yet, while [Section] 2702(a)(3) is more applicable, [Section] 2702(c)(6) provides an exception by which an ISP 'may divulge a record or other information pertaining to a subscriber or other customer . . . to any person other than a government entity." *CineTel Films, Inc. v. Does 1-1,052*, 853 F. Supp. 2d 545, 556 n.5 (D. Md. 2012). "Therefore, because [Strike 3 is] not [a] government entit[y], disclosure of the subpoenaed identifying information is permitted." *Id.* (collecting cases); *TCYK, LLC v. Does 1-87*, No. 13-3845, 2013 WL 5567772, at *3 (N.D. Ill. Oct. 9, 2013) ("Thus, [the SCA] allows the disclosure of this type of customer information to non-government entities, such as the plaintiff in this case.").

While the SCA does not create the kind of qualified privacy right (or notice requirement) that Doe's Motion hinges on, the CCPA does. That statute states that "a cable operator," such as an ISP, "shall not disclose personally identifiable information concerning any subscriber" subject to certain exceptions. *See* 47 U.S.C. § 551(c)(1). Relevantly, the statute permits disclosures of subscriber information "made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed[.]" *Id.* § 551(c)(2)(B). This language is expressly adopted in the Court's order granting

10

early discovery, [ECF No. 6, at ¶ 3], and has been approved of by courts across the country.[4]

Despite misapplying the incorrect statute, Doe contends that he "did not receive notice of the subpoena and was not given an opportunity to object[.]" [ECF No. 22, at 7].  Again, the only arguably pertinent section of the SCA, Section 2702, does *not* require the ISP give a subscriber notice prior to disclosure of that information, but the CCPA does contain such a requirement.   47 U.S.C. § 551(c)(2)(B). Yet Doe has provided zero evidence in support of his contention. *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ("Arguments in the parties' briefs are not evidence.").  Indeed, Doe later prevaricates that "to date, Defendant *has not seen* a copy of that subpoena[.]"  [ECF No. 22, at 23] (emphasis added). There is no declaration to the fact, no indication that Doe searched his mail or emails, and no evidence that Doe has even contacted his ISP to determine whether notice was sent.

---

[4] *See*, *e.g.*, *Strike 3 Holdings, LLC v. Doe*, 330 F.R.D. 552, 555 (D. Minn. 2019) ("The privacy protections of the [CCPA] do not foreclose a Rule 45 subpoena."); *In re Various Strike 3 Holdings, LLC Copyright Infringement Cases*, No. 17-6717 (WFK)(CLP), 2018 WL 3404142, at *3 (E.D.N.Y. July 11, 2018); *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 256 (W.D.N.Y. 2018); *Strike 3 Holdings, LLC v. Doe*, No. 19-115 (JBA), 2019 WL 2066963, at *4 (D. Conn. May 10, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-10677 (TJH)(SPx), 2020 WL 5357781, at *2 (C.D. Cal. Apr. 23, 2020).

As the party seeking reconsideration, the burden rests with Doe to make a showing, and he has not provided any evidence.[5]  Indeed, AT&T, which maintains a legal compliance department, has received subpoenas like this in the past and provided notices to subscribers.  When Strike 3 issued its subpoena, it appended the Court's Order.  *See* Exhibit A. If Doe's argument has any merit, his dispute is with the ISP–not Strike 3–nor does Doe's grievance provide grounds to dismiss the FAC.  *Cf.* Fed. R. Civ. P. 41(b) (permitting dismissal when "*the plaintiff* fails . . . to comply with . . . a court order") (emphasis added).

Defendant's last-ditch resort to the "fruit of the poisonous tree" doctrine does not absolve him of this burden.  [ECF No. 22, at 17–18].  The doctrine is completely out of place in this civil action–both because Strike 3 is not a government agent and because there is no Fourth Amendment violation.  But even if this were the proper context, that doctrine would not apply.

---

[5] Additionally, myriad procedures and exceptions are baked into the SCA that do not render deficient notice fatal.  *See In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 287 (4th Cir. 2013) ("In seeking access to records, [18 U.S.C. § 2703(c)(3) provides that] the government need not give prior notice to the subscriber or customer.  [Section 2705(b)] also provides for gag orders, which direct the recipient of a § 2703(d) order to refrain from disclosing the existence of the order or investigation."); *see also In re U.S.*, 665 F. Supp. 2d 1210, 1224 (D. Or. 2009) ("In this third party context, the Fourth Amendment notice requirement is satisfied when a valid warrant is obtained and served on the holder of the property to be seized, the ISP.").

"[T]he 'fruit of the poisonous tree' doctrine . . . bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *United States v. Williams*, 615 F.3d 657, 668 (6th Cir. 2010).   Its "animating purpose" is "the deterrence of unlawful government behavior." *U.S. v. Gross*, 662 F.3d 393, 401 (6th Cir. 2011) (citing *Elkins v. United States*, 364 U.S. 206, 217 (1960)).

The doctrine is, at its core, a balancing test, *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), which "ensures that the government cannot achieve indirectly what it is forbidden to accomplish directly." *United States v. Leake*, 95 F.3d 409, 411 (6th Cir. 1996).   Yet, "[s]uppression of evidence . . . has always been [a] last resort, not [a] first impulse." *Utah v. Strieff*, 579 U.S. 232, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016) (citation omitted). Accordingly, there are longstanding exceptions to the doctrine such as the "inevitable discovery doctrine" which holds that "evidence may be admitted if the government can show that the evidence inevitably would have been obtained from lawful sources in the absence of the illegal discovery." *Leake*, 95 F.3d at 412.

That exemption to the criminal doctrine provides a fitting analogy to this litigation.  Assuming Defendant never received notice, that would not have been the result of any misconduct by Strike 3; its subpoena was authorized by the Court which instructed the ISP to provide Defendant with notice pursuant to 47 U.S.C.

§ 551(c)(2)(B).  [ECF No. 6, at ¶ 3].  And the remedy for the ISP's failure to satisfy this condition precedent would not be to terminate all litigation, but to quash the subpoena without prejudice, permitting Strike 3 to reembark on early discovery and the ISP to provide the requisite notice.

Indeed, vacatur is disproportional to the facts of the case.  First, the relief Doe seeks is moot.  *See Strike 3 Holdings, LLC v. Doe*, No. 19-02473 (JDW), ECF No. 8, at *1 (E.D. Pa. Aug. 20, 2019) (holding defendant's motion to quash moot after defendant inadvertently disclosed the identity because "[q]uashing the subpoena cannot un-ring the bell").  Strike 3 has already investigated Doe's connection to the infringement and determined that adequate evidence exists to prosecute its claim. *See* [ECF No. 9].  Second, Doe has not raised any grounds to quash or modify the subpoena under Rule 45(d)(3), let alone a single case holding that an ISP's failure to provide notice is grounds to quash a rightsholder's subpoena or dismiss its claim. Nor does Doe contend that Strike 3's early discovery was irrelevant or disproportional.  Fed. R. Civ. P. 26(b)(2).

Finally, Doe has suffered no prejudice as a result of the subpoena.  Before Strike 3 even issued its subpoena, the Court entered a protective order instructing Strike 3 to refer to Doe pseudonymously. [ECF Nos. 5–6].  This allowed Strike 3 to investigate its claim and perfect service while shielding Doe's identity from the public docket.  With these protections in place, it is not clear what other relief Doe

seeks beyond setting the litigation back months.  *But see* Fed. R. Civ. P. 1.  If Doe believes these safeguards are inadequate, nothing prevents him from moving for an additional protective order.  Fed. R. Civ. P. 26(c).  Yet it would simply be too harsh a sanction to suppress the only evidence Strike 3 has of Doe's identity as a result of the ISP's *alleged and unsubstantiated* omission.

### B.   Strike 3 Has Alleged Sufficient Factual Matter to State a Plausible Claim for Relief

#### 1.   Strike 3's First Amended Complaint is Not "Merely Speculative"

Defendant's Rule 12(b)(6) challenge spans a mere three-pages but makes expansive challenges to Strike 3's FAC as well as anticipatory objections to discovery that has not yet occurred.  Those arguments either misread the FAC or misapprehend the posture of the litigation.  The FAC makes clear that Strike 3 is not alleging that "anyone" could have infringed its copyrights.  Rather, Strike 3's claim specifically ties Doe to the infringement.

First, on the pleadings, "it takes no great imagination to see how evidence that a file was downloaded by a certain IP address could support a plausible claim that the file was downloaded by the subscriber at that IP address."  *Strike 3 Holdings, LLC v. Doe*, No. 19-396 (GJH), 2020 WL 917090, at *3 (D. Md. Feb. 25, 2020) (citation omitted); *see Strike 3*, 964 F.3d at 1211.  This Court has generally held that such allegations are at least plausible:

> [T]he complaint alleges that Defendant exercises control over the IP address in question.  Defendant is the person who purchased an internet subscription and was assigned the unique IP address at issue.  And that unique IP address is being used to distribute Plaintiff's copyrighted movies.  While there is a possibility that a third party has somehow gained access to Defendant's IP address, the more likely explanation is that it is Defendant who is distributing Plaintiff's works.  This is all that is required to plausibly state a claim for relief on which relief may be granted.

*Malibu Media LLC v. Doe*, No. 13-12178, 2013 WL 3945978, at *4 (E.D. Mich. July 31, 2013) (Ludington, J.); *Malibu Media, LLC v. Braun*, No. 14-12409, 2015 WL 1014951, at *2–3 (E.D. Mich. Mar. 9, 2015) (adopting Judge Ludington's analysis to deny defendant's motion to dismiss); s*ee also Malibu Media, LLC v. Doe*, No. 15-10307, 2015 WL 1886210, at *2 (E.D. Mich. Apr. 24, 2015); *Malibu Media, L.L.C. v. Doe*, No. 15-11139, 2015 WL 13297956, at *1 (E.D. Mich. July 27, 2015).

Second, Doe's handwringing over whether the subscriber or someone else infringed Strike 3's works also ignores critical portions of the pleadings; Strike 3 has filed a FAC specifically against Doe (who also happens to be the subscriber).  The FAC contains additional factual allegations that connect Doe to the infringement. *See generally* [ECF No. 9, at ¶¶ 47–56].[6]  Strike 3's allegations of these additional connections not only makes it unlikely that someone else is the infringer, but render it not just plausible but *likely* that Doe is the infringer–exceeding the *Iqbal*/*Twombly*

---

[6] That portion of the FAC is redacted on the docket to further safeguard Doe's identity, but Doe has been served with an unredacted copy.

standard.[7]   *See Malibu Media, LLC v. Doe*, No. 14-748 (WDQ), 2015 WL 857408, at *4 (D. Md. Feb. 26, 2015) ("That the Defendant's IP address was used to obtain 2,034 other third party files through BitTorrent over an 18-month period supports the reasonable inference that the Defendant—and not some other person using the Defendant's IP address—was the infringer."); *Malibu Media, LLC v. Doe*, No. 18-450, 2019 WL 8301066, at *2 (N.D. Ill. June 5, 2019) ("[T]he additional works may serve as circumstantial evidence that [Defendant], and not another individual accessing the IP address, downloaded [Plaintiff]'s copyrighted works."). Particularly when viewed in the light most favorable to Strike 3, these allegations,

---

[7] No court reviewing Strike 3's cases has held that Plaintiff's amended complaint conclusory linked the defendant to the infringement. *See*, *e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-06488, ECF 24 (N.D. Ill. Apr. 4, 2019) ("Even if the bare fact that someone at defendant's IP address downloaded plaintiff's films is not enough to sue defendant, plaintiff has alleged additional facts linking defendant's interests, as expressed on social media, to BitTorrent piracy at his IP address.  For example, plaintiff alleges not only that someone used defendant's IP address to download its films, but also that defendant follows several of plaintiff's performers on social media and even retweeted suggestions for future films to plaintiff's chief creative officer.  These allegations together state a plausible, nonspeculative claim for relief under federal pleading standards."); *Strike 3 Holdings, LLC v. Doe*, No. 18-01874 (GLR), ECF No. 17 (D. Md. Oct. 26, 2018) (denying motion to dismiss); *Strike 3 Holdings, LLC v. Doe*, No. CV 18-14060, ECF No. 14 (E.D. Mich. May 31, 2019) (same); *Strike 3 Holdings, LLC v. Nemeth*, No. 20-00960 (CMH)(IDD), ECF No. 39 (E.D. Va. Jun. 21, 2021) (same).  While two cases had held Strike 3's original complaint made conclusive allegations–prior to Strike 3 was able to issue an early subpoena–both opinions were overturned on appeal. *Strike 3 Holdings, LLC v. Doe*, No. 18-12585 (NLH)(JS), 2019 WL 5446239, at *7 (D.N.J. Oct. 24, 2019), *rev'd*, No. 18-12585 (NLH)(JS), 2020 WL 3567282 (D.N.J. June 30, 2020); *see Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160, 164 (D.D.C. 2018), *rev'd and remanded*, 964 F.3d 1203 (D.C. Cir. 2020).

at a minimum, have "nudged [the claim] across the line from conceivable to plausible," and thus stated a valid claim upon which relief can be granted. *See Twombly*, 550 U.S. at 570.

### 2.   Doe's Objections Based on Various Privileges is Premature

Finally, the Motion describes the procedure backwards when Doe states that "[t]o establish its claim against Defendant, Plaintiff will have to introduce evidence that Defendant himself knowingly downloaded the copyrighted material," [ECF No. 22, at 25], and that "discovery in this case will be futile[.]" *Id*. at 27. More surprisingly, Doe does not contend that discovery will be futile because Strike 3 will not discover evidence supporting its claim, but because Doe will invoke a bevy of privileges that will stymie Strike 3's prosecution. *See id.* at 26.  This not only ignores the function of a Rule 12(b)(6) challenge, but misapprehends how these privileges (and discovery in general) apply.

"A Rule 12(b)(6) motion tests the sufficiency of a complaint." *InterVarsity Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*, 413 F. Supp. 3d 687, 693 (E.D. Mich. 2019) (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)).  "At this stage of the proceedings, '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant *is entitled to offer evidence to support the claims.*'" *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184, 125 S. Ct. 1497, 1510, 161 L. Ed. 2d 361 (2005) (citation

omitted) (emphasis added).  Thus, inquiries into the ultimate merits of Strike 3's FAC is simply a matter for a later date "*after* adequate time for discovery[.]"  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986) (emphasis added).  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 556; *cf. Strike 3*, 964 F.3d at 1211 (rejecting argument that further discovery was needed to state a claim).

Neither Doe nor Strike 3 have a crystal ball that can predict what shape the litigation will take, and Doe's premature invocations of privileges to discovery not yet propounded are unripe.  Regardless, under the Federal Rules, depositions are appropriate.  *See*, *e.g*., *Strike 3 Holdings, LLC v. Doe*, No. 21-423 (PX), 2021 WL 1169272, at *3 (D. Md. Mar. 26, 2021) (permitting Strike 3 to depose the subscriber after receiving identifying information from ISP).  As are requests for production, admission, and interrogatories.  Engaging in discovery is essential, and the Court may compel Doe to participate when appropriate.  *See* Fed. R. Civ. P. 37; *see also Strike 3 Holdings, LLC v. Bordley*, No. 18-868, 2019 WL 9098120, at *1 n.1 (E.D. Pa. Feb. 26, 2019) (compelling production).  It is certainly Doe's right to object to discovery, *see* Fed. R. Civ. P. 30(c)(2), including through the Fifth Amendment

privilege against self-incrimination, but as this is a civil case–and not a criminal one–that privilege is limited.

"[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a Civil cause.'" *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 1558, 47 L. Ed. 2d 810 (1976) (citation omitted); *see Malibu Media, LLC v. Tashiro*, No. 13 -00205 (WTL), 2015 WL 2371597, at *15 (S.D. Ind. May 18, 2015), *report and recommendation adopted*, No. 13-205 (WTL)(MJD), 2015 WL 3649359 (S.D. Ind. June 11, 2015) (observing that while defendant "refused to answer whether he 'ever use[d] BitTorrent to download Plaintiff's adult movies'" after invoking his Fifth Amendment privilege, "the Court may infer that [defendant] did in fact use BitTorrent to download Plaintiff's adult movies"). Afterall, "[s]ilence is often evidence of the most persuasive character." *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153–54, 44 S. Ct. 54, 56, 68 L. Ed. 221 (1923) (Brandeis, J.). Doe may rest on his Fifth Amendment right, but it does not doom Strike 3's case.

Moreover, Doe's presumption that Strike 3 would also depose his significant other–and that the marital privileges bar this–puts the cart before the horse. First, the privilege against adverse spousal testimony cannot be unilaterally invoked by Doe because "the privilege vests only in the testifying spouse." *United States v.*

*Sims*, 755 F.2d 1239, 1240 (6th Cir. 1985) (citation omitted).  "[T]he witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying."  *Trammel v. United States*, 445 U.S. 40, 53, 100 S. Ct. 906, 914, 63 L. Ed. 2d 186 (1980).

Second, while Doe may invoke the privilege against confidential marital communications without his spouse's permission, *see Sims*, 755 F.2d at 1241 (citation omitted), that privilege is limited to only those "communication[s] . . . made in confidence" with Doe's spouse.  *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993).  At this point, there is no indication that Strike 3 will have reason to depose, or take any discovery, from Doe's spouse, let alone pursue discovery into such confidential communications.  If discovery progresses and Strike 3 deems such testimony pertinent, Doe may raise his objections then, but at this stage, such concerns are premature.

Notwithstanding any of Doe's preemptive objections, "[a] party is privileged from producing the evidence, but not from its production."  *Johnson v. United States*, 228 U.S. 457, 458, 33 S. Ct. 572, 572, 57 L. Ed. 919 (1913) (Holmes, J.).  Despite the sweeping and unsupported statement that "friends, family, and other individuals" cannot be compelled to testify, [ECF No. 22, at 27], third-party discovery is not only appropriate, it is enshrined in Fed. R. Civ. P. 45.  Thus, none of Doe's evidentiary

21

concerns foreclose Strike 3 from discovery or from carrying its ultimate burden at the appropriate stage.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant's Incorporated Motion to Dismiss.

Dated: October 4, 2021                    Respectfully submitted,

**BOROJA, BERNIER &**
**ASSOCIATES PLLC**

_/s/ Joel A. Bernier_
By:  JOEL A. BERNIER (P74226)
Daniel Boroja (P77079)
49139 Schoenherr Rd.
Shelby Township, MI 48315
T: 586-991-7611
F: 586-991-7612
Email: Bbclawgroup@gmail.com
_Attorney for Plaintiff_

## <u>LOCAL RULE CERTIFICATION</u>

I, Joel A. Bernier, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

/s/ <i>Joel A. Bernier</i>
By:  JOEL A. BERNIER (P74226)

23